CAPRICORN EQUITY CORPORATION, a NORTH CAROLINA CORPORATION v. THE TOWN OF CHAPEL HILL BOARD OF ADJUSTMENT

No. 187PA92

(Filed 2 July 1993)

**Municipal Corporations § 30.8 (NCI3d)— duplexes—defined**

A superior court determination that petitioner's proposed duplexes constituted duplexes rather than rooming houses under the Chapel Hill Development Ordinance was reinstated where petitioner applied for building permits to construct duplexes intended for occupancy by graduate students on Roberson Street in Chapel Hill; half of each duplex contained 6 bedrooms with 3 connecting bathrooms, a kitchen/dining area, and a great room; petitioner was notified that the structures appeared to be rooming houses in violation of the zoning ordinance; petitioner made changes in the leases to make all tenants jointly and severally liable for rent, reduced available parking places, and changed individually keyed locks on bedroom doors to privacy locks; certificates of occupancy were issued; petitioner applied for permits for three duplexes on Green Street

which would be substantially similar to those on Roberson Street; permits were denied based on a determination that these were rooming houses; the Board of Adjustment vote to reverse that decision did not reach the required four-fifths majority and the decision to deny the permits stood; the superior court concluded that the structures constituted duplexes and satisfied all applicable requirements and ordered that the respondent Board reverse the town manager's decision to deny the permits; and the Court of Appeals stated that the superior court had failed to set forth findings in support of its conclusion and remanded. The Court of Appeals erred because there were no factual disputes raised by the evidence presented at the hearing before the Board of Adjustment and the superior court, sitting as an appellate court, could freely substitute its judgment for that of respondent. Applying the rules of interpretation that words must be given their ordinary meaning and restrictions on usage construed in favor of the landowner, the Town's ordinance as a matter of law will not support the interpretation urged by the Board. No functional description is given in the ordinance of a "single housekeeping unit" other than the sharing of a single culinary facility; given that these duplexes include only one such facility, the proposed tenants were not excluded from "family" as defined in the ordinance and, although groups whose association is of an institutional nature are regulated by the ordinance, an association of graduate students is not on its face of such a nature.

**Am Jur 2d, Buildings §§ 8-11.**

On discretionary review of the decision of the Court of Appeals, 106 N.C. App. 134, 415 S.E.2d 752 (1992), reversing a judgment entered 20 February 1991 by Allsbrook, J., in the Superior Court, Orange County, which reversed respondent's decision affirming denial of building and zoning compliance permits to petitioner. Heard in the Supreme Court 15 February 1993.

*Michael B. Brough & Associates, by Michael B. Brough, for petitioner-appellant.*

*Ralph D. Karpinos, Chapel Hill Town Attorney's Office, for respondent-appellee.*

PARKER, Justice.

The issues before the Court for review are (i) whether the Court of Appeals erred in remanding the case to superior court to make findings of fact and (ii) whether the superior court erred in reversing the decision of respondent board to deny petitioner's application for building and zoning compliance permits. The factual background of this action is as follows. In October 1989 petitioner applied to the Town of Chapel Hill Inspections Department for building permits to construct duplexes intended for occupancy by graduate students on Roberson Street in Chapel Hill, North Carolina ("Town"). Half of each duplex comprised about 3100 square feet and contained 6 bedrooms with 3 connecting bathrooms, a kitchen/dining area, and a great room. Town's planning director notified petitioner that the structures appeared to be rooming houses in violation of Town's zoning ordinance and that certificates of occupancy would not be issued. Petitioner made changes in the proposed leases to make all tenants jointly and severally liable for rent, reduced available parking spaces, and changed individual keyed locks on the bedroom doors to privacy locks. With these modifications, on 27 July 1990 certificates of occupancy for the Roberson Street duplexes were issued.

On 14 September 1990 petitioner applied for building and zoning compliance permits for three duplexes on Green Street; these duplexes are the subject of the instant action. Each affected half-acre lot was in an R-4 zoning district, within which duplexes are a permitted use. Chapel Hill, N.C., Development Ordinance art. 12, § 12.3 (1990). Each half of a duplex had a proposed floor area of about 3000 square feet, 6 bedrooms with 3 connecting bathrooms, a kitchen/dining area, and a great room. Although the Green Street structures were substantially similar to those on Roberson Street, Town's planning director determined that the Green Street structures constituted rooming houses. Approval of the structures as rooming houses would require site plan approval by the Planning Board and compliance with additional provisions of the Development Ordinance. On 10 October 1990 the town manager officially denied the permit requests on this basis.

Petitioner appealed the town manager's decision to respondent board; respondent heard the appeal on 5 December 1990. Respondent voted six to four to reverse the decision to deny the permits.

Since a four-fifths majority vote was required to reverse, *see* N.C.G.S. § 160A-388(e) (Supp. 1992), the decision to deny the permits stood.

Thereafter, petitioner sought judicial review by petitioning for a writ of certiorari to the superior court. The superior court issued its writ on 31 December 1990. In its judgment, the superior court concluded that the Green Street structures constituted duplexes and satisfied all applicable requirements for issuance of building and zoning compliance permits under Town's ordinance. The court concluded further that respondent's "decision affirming the town manager's interpretation of the development ordinance was erroneous as a matter of law." Thus the court ordered that respondent reverse the town manager's decision to deny permits.

Respondent appealed to the Court of Appeals, contending that (i) respondent correctly denied the permits because the proposed structures were rooming houses and not duplexes and (ii) the superior court erred in reversing respondent's decision interpreting Town's ordinance. The Court of Appeals addressed only the latter contention and stated that the superior court reversed respondent's decision on grounds that its interpretation of the ordinance was erroneous as a matter of law but failed to set forth any findings of fact in support of this conclusion or tending to show respondent's "decision was arbitrary, oppressive, or an abuse of authority." *Capricorn Equity Corp. v. Town of Chapel Hill Bd. of Adjust.*, 106 N.C. App. 134, 138, 415 S.E.2d 752, 755, *review allowed*, 332 N.C. 482, 421 S.E.2d 350 (1992). The court remanded the case to the superior court with instructions to make adequate findings of fact establishing the erroneous nature of respondent's interpretation and decision and to "mold its findings to the language of the ordinance." *Id.* at 138-39, 415 S.E.2d at 755. This Court granted petitioner's petition for discretionary review on 10 October 1992.

Chapter 160A provides that every decision of a municipal board of adjustment "shall be subject to review by the superior court by proceedings in the nature of certiorari." N.C.G.S. § 160A-388(e) (Supp. 1992). In proceedings of this nature,

> the findings of fact made by the Board, if supported by evidence introduced at the hearing before the Board, are conclusive. *In re Application of Hasting*, 252 N.C. 327, 113 S.E.2d 433; *In re Pine Hill Cemeteries, Inc.*, 219 N.C. 735, 15 S.E.2d 1. The matter is before the Court to determine whether an error of law has been committed and to give relief from an order

of the Board which is found to be arbitrary, oppressive or attended with manifest abuse of authority. *Durham County v. Addison*, 262 N.C. 280, 136 S.E.2d 600; *Lee v. Board of Adjustment*, 226 N.C. 107, 37 S.E.2d 128. It is not the function of the reviewing court, in such a proceeding, to find the facts but to determine whether the findings of fact made by the Board are supported by the evidence before the Board. It may vacate an order based upon a finding of fact not supported by evidence.

*In re Campsites Unlimited*, 287 N.C. 493, 498, 215 S.E.2d 73, 76 (1975); *see also Godfrey v. Zoning Bd. of Adjustment*, 317 N.C. 51, 54-55, 344 S.E.2d 272, 274 (1986). The superior court is not the trier of fact but rather sits as an appellate court and may review both (i) sufficiency of the evidence presented to the municipal board and (ii) whether the record reveals error of law. *Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 626, 265 S.E.2d 379, 383, *reh'g denied*, 300 N.C. 562, 270 S.E.2d 106 (1980); *see also Batch v. Town of Chapel Hill*, 326 N.C. 1, 11, 387 S.E.2d 655, 662 ("The superior court judge may not make additional findings [of fact]. The test is whether the findings of fact are supported by competent evidence in the record; if so, they are conclusive upon review.") (citation omitted), *cert. denied*, 496 U.S. 931, 110 L. Ed. 2d 651 (1990). *Contra CG&T Corp. v. Bd. of Adjustment of Wilmington*, 105 N.C. App. 32, 40, 411 S.E.2d 655, 660 (1992) (adopting whole record test). In light of these principles of review applicable to the superior court when hearing a case based solely on the record certified from an administrative board, the Court of Appeals erred in remanding this case to the superior court for findings of fact.

The superior court's judgment states that the court "reviewed the undisputed facts set forth in the record stipulated by counsel for petitioner and respondent as the official record of the board of adjustment's decision." Respondent did not assign error to this portion of the judgment and argued in the Court of Appeals and before this Court that written findings of fact were not required. Before this Court petitioner argues, and we agree, that there were no factual disputes raised by the evidence presented at the hearing before respondent. The questions respondent was called upon to decide were (i) how to interpret "duplex" as used in Town's ordinance and (ii) whether on the undisputed facts petitioner's plan came within the purview of that definition. *See Concrete Co. v.*

*Board of Commissioners*, 299 N.C. at 629, 265 S.E.2d at 384 (stating issue was whether commissioners made an error of law in interpreting exemption section of county's ordinance).

The only question for the Court of Appeals, then, was whether in reversing respondent's decision, the superior court committed error of law in interpreting and applying the municipal ordinance. In determining whether error of law existed, the superior court, sitting as an appellate court, could freely substitute its judgment for that of respondent and apply *de novo* review as could the Court of Appeals with respect to the judgment of the superior court. *See Savings and Loan League v. Credit Union Comm.*, 302 N.C. 458, 464-65, 276 S.E.2d 404, 409-10 (1981) (stating that error in interpreting a statute is an error of law and the court may apply *de novo* review). Upon *de novo* review of the Chapel Hill Development Ordinance, we conclude the decision of the superior court must be reinstated.

The applicable ordinance provided as follows:

2.35 Dwelling: Any building or structure (except a mobile home) that is wholly or partly used or intended to be used for living or sleeping by one or more human occupants.

2.39 Dwelling, Two-Family—Duplex: A single dwelling consisting of two (2) dwelling units (other than a two-family dwelling—including accessory apartment—see Section 2.38 above), provided [that] the two dwelling units are connected by or share a common floor-to-ceiling wall, or, if the two units are arranged vertically, that they share a common floor/ceiling and not simply by [sic] an unenclosed passageway (e.g., covered walkway).

. . . .

2.41 Dwelling Unit: A room or group of rooms within a dwelling forming a single independent habitable unit used or intended to be used for living, sleeping, sanitation, cooking, and eating purposes by one family only; for owner occupancy or for rental, lease or other occupancy on a weekly or longer basis; and containing independent kitchen, sanitary, and sleeping facilities; and provided such dwelling unit complies with Chapel Hill's Minimum Housing Code.

2.45 Family: An individual living alone or two (2) or more persons living together as a single housekeeping unit, using a single facility in a dwelling unit for culinary purposes. The term "family" shall include an establishment with support and supervisory personnel that provides room and board, personal care and habilitation services in a family environment for not more than 6 residents who are handicapped, aged, disabled, or who are runaway, disturbed or emotionally deprived children and who are undergoing rehabilitation or extended care. The term "family" shall not be construed to include a fraternity or sorority, club, rooming house, institutional group or the like.[1]

2.66 Lodging Unit: A room or group of rooms forming a separate habitable unit used or intended to be used for living and sleeping purposes by one family only, without independent kitchen facilities; or a separate habitable unit, with or without independent kitchen facilities, occupied or intended to be occupied by transients on a rental or lease basis for periods of less than one week.

2.108 Rooming House: A building or group of buildings containing in combination three (3) to nine (9) lodging units intended primarily for rental or lease for periods of longer than one week, with or without board. Emergency shelters for homeless persons and residential support facilities, as defined elsewhere in this ordinance, are not included.

Chapel Hill, N.C., Development Ord. art. 2 (1990).

In interpreting a municipal ordinance "[t]he basic rule is to ascertain and effectuate the intent of the legislative body." *Concrete Co. v. Board of Commissioners*, 299 N.C. at 629, 265 S.E.2d at 385. Intent is determined according to the same general rules governing statutory construction, that is, by examining (i) language, (ii) spirit, and (iii) goal of the ordinance. *Id.* Since zoning ordinances are in derogation of common-law property rights, limitations and

---

1. This section was amended effective 29 October 1990 and now reads as follows:

A duplex structure with more than three (3) bedrooms within either dwelling unit shall be classified as a Rooming House unless each dwelling unit is occupied by persons related by blood, adoption, or marriage, with not more than two unrelated persons.

restrictions not clearly within the scope of the language employed in such ordinances should be excluded from the operation thereof. *Yancey v. Heafner*, 268 N.C. 263, 266, 150 S.E.2d 440, 443 (1966).

Applying these principles, and turning first to the language of the ordinance, we note that lodging units are intended to be occupied by transients for periods of less than one week. Rooming houses are made up of lodging units intended primarily for rental or lease for periods of longer than one week with or without board. These definitions contemplate ongoing, on-site property management of the type usually associated with hotels, motels, and boarding houses. By contrast, dwelling units are not intended for transients and do not offer board. Dwelling units are intended for use by one family only, and a duplex is simply a unitary structure which includes two dwelling units. Families *live together as a single housekeeping unit and use a single facility in a dwelling unit for culinary purposes* but may not include sororities, fraternities, clubs, rooming house lodgers or institutional groups. As the Court of Appeals noted, in defining "family" Town's ordinance imposed neither a numerical nor relationship requirement and did not specifically define the term except to enunciate certain exclusions.

Admittedly, controlling density, traffic congestion, noise pollution and parking problems and preserving the residential character of neighborhoods are legitimate goals of zoning ordinances; and boarding houses, fraternity houses and the like present urban concerns particularly in university towns. *Village of Belle Terre v. Boraas*, 416 U.S. 1, 39 L. Ed. 2d 797 (1974). Notwithstanding the worthiness of these goals, however, neither the court nor the adjustment board is authorized, under the guise of construction, "to supply what the legislative body might have provided but which the court cannot [by] reasonable construction say that it did provide." 8 Eugene McQuillin, *The Law of Municipal Corporations* § 25.128.10, at 523 (3d ed. 1991). Applying the rules of interpretation that words must be given their ordinary meaning and restrictions on usage construed in favor of the landowner, we find as a matter of law that Town's ordinance under scrutiny will not permit the interpretation urged by respondent.

No functional description is given of "single housekeeping unit" other than the sharing of a single culinary facility. Given that petitioner's duplexes included only one such facility, the proposed tenants were not excluded from "family" as defined in the or-

dinance. In addition, although groups of persons whose association is of an institutional nature are enumerated and regulated by the ordinance, the association of graduate students is not on its face of such a nature. Being of a noninstitutional nature, such an association is not specifically regulated and so, following the canons of construction, must be excluded from the operation of that part of the ordinance which affects persons in associations of an institutional type.

For the foregoing reasons we conclude the superior court's determination that petitioner's proposed duplexes constituted duplexes under Town's ordinance must be reinstated. Therefore, we reverse and remand to the Court of Appeals for affirmance of the decision of the superior court.

REVERSED.