LAMAR OCI SOUTH CORPORATION, D/B/A LAMAR ADVERTISING OF ASHEVILLE, PETITIONER v. STANLY COUNTY ZONING BOARD OF ADJUSTMENT AND STANLY COUNTY, RESPONDENTS

No. COA06-993

(Filed 18 September 2007)

**1. Zoning— outdoor advertising billboard—county ordinance preempted by State law**

The superior court erred by concluding that a county's zoning ordinance prohibiting the relocation of the pertinent billboard was not preempted by State law regulating outdoor advertising, because: (1) although the North Carolina Outdoor Advertising Control Act (OACA) and its corresponding regulations do not preempt local regulation of outdoor advertising under N.C.G.S. § 160A-174(b)(5), N.C.G.S. § 160A-174(b)(2) provides that Department of Transportation (DOT) regulations preempt the county's zoning ordinance; (2) OACA and DOT's regulations allow a permit holder to move a nonconforming sign within the bounds of the sign location/site as defined by 19A N.C.A.C. 2E.0201(27) while in contrast Article IV Section 406.4(G) of the county's zoning ordinance provides that a nonconforming sign shall not be moved or replaced except to bring the sign into complete conformity with the county's ordinance; (3) the county ordinance makes unlawful an act, omission, or condition expressly made lawful by State law; (4) petitioner was not required to apply for a new permit from the county when at all times it had a valid DOT permit, and a permit issued by DOT shall be valid until revoked for nonconformance with the OACA or rules adopted by DOT; and (5) the county's denial of a permit to petitioner would in effect cause the billboard to be removed, which could not be done without the payment of just compensation.

**2. Appeal and Error— superior court—motion to supplement record—affidavits**

The superior court did not err by denying respondents' motion to supplement the record before the superior court with the affidavits of the Planning Director and Zoning Administrator for the County, and two people who did not testify before the board, because the affidavits were not before the board.

Judge McGEE concurring in part and dissenting in part.

Appeal by Petitioner from order entered 19 April 2006 and by Respondents from order entered 28 April 2006 by Judge Mark E. Klass in Stanly County Superior Court. Heard in the Court of Appeals 10 April 2007.

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Craig D. Justus, for Petitioner.*

*Hamilton Moon Stephens Steele & Martin, PLLC, by Robert C. Stephens and Mark R. Kutny; The Law Office of Joshua J. Morton, by Joshua J. Morton, Jr., for Respondents.*

STEPHENS, Judge.

Lamar OCI South Corporation, d/b/a Lamar Advertising of Asheville ("Lamar"), appeals from an order of the Superior Court affirming a decision of the Stanly County Board of Adjustment ("the Board"). The Board and Stanly County (collectively "Respondents") appeal from an order of the Superior Court denying Respondents' motion to supplement the record before the Superior Court.

Lamar is an outdoor advertising company that leases a parcel of real estate in Stanly County, located along N.C. Highway 24/27, for an outdoor advertising sign ("the billboard"). The relevant parcel of real estate is zoned Highway Business ("HB"). The billboard was constructed in 1997, at which time Stanly County ("the County") and the Department of Transportation ("DOT") issued permits for the billboard. At that time, the County's zoning ordinance permitted outdoor advertising signs in HB zoning districts. In 2001, the County amended its zoning ordinance. As amended, the zoning ordinance prohibited outdoor advertising signs in HB zoning districts. Because it was located in an area in which outdoor advertising signs were prohibited by the amended ordinance, the billboard acquired

the status of a legal nonconforming sign under a grandfathering provision of the zoning ordinance.

Bobby Soule, Lamar's Vice-President and General Manager, testified before the Board that DOT notified Lamar in early 2004 that DOT planned to widen N.C. Highway 24/27, that the billboard was located in the right-of-way of the proposed road widening, and that DOT would require the billboard to be relocated. Accordingly, Lamar relocated the billboard approximately fifty feet back from N.C. Highway 24/27. When Lamar relocated the billboard, it replaced the four poles of the billboard with four new poles. Otherwise, the billboard remained the same. Lamar did not inform the County of the relocation or request any permit from the County. DOT reimbursed Lamar for the costs of relocating the billboard.

Lamar received a letter dated 19 August 2004 from the County's zoning enforcement officer stating that Lamar's relocation of the billboard violated the County's zoning ordinance. Lamar contacted Ritchie Hearne ("Hearne"), a DOT district engineer, about the status of Lamar's DOT permit. In a letter dated 23 August 2004, Hearne stated that DOT regulations permitted a

> sign owner to relocate [a] sign from its original location off new right of way as long as it remains in the "sign location/ site" as defined by [DOT's] regulations. The subject sign met [DOT's] criteria and will keep the same application, milepost and permit numbers.

In a letter dated 30 August 2004, Lamar's attorney responded to the County, stating Lamar's position that the County could not prevent Lamar from taking any action authorized by DOT under DOT's sign regulatory program. Lamar also indicated it was willing to submit a permit application and fee to the County. Michael Sandy ("Sandy"), Planning Director and Zoning Administrator for the County, responded to Lamar by letter dated 28 February 2005. The letter informed Lamar that the billboard violated the County's zoning ordinance. Lamar timely appealed the decision to the Board.

The Board heard Lamar's appeal on 12 April 2005. Sandy testified that the County cited Lamar for failing to obtain a permit to erect a sign at the location where the billboard presently stood. He also stated that had Lamar submitted a permit application, the County would not have granted a permit since the zoning ordinance no longer allowed outdoor advertising in HB zoning districts.

Hearne also testified at the hearing. He stated that, at the time of the hearing, Lamar had a valid permit for the billboard from DOT. He also testified that DOT regulations allowed a permit holder, without DOT's permission or knowledge, to move a sign "back" from a right-of-way as long as the sign was not moved more than 1/100th of a mile parallel to the right-of-way. If a sign did not conform to DOT regulations, then DOT would not allow the sign to be relocated, although DOT would be required to compensate the sign owner.

The Board unanimously affirmed Sandy's zoning decision. The Board concluded that when Lamar relocated the billboard, it lost its status as a legal nonconforming sign under the County's zoning ordinance because of the restriction of signs in areas zoned HB.

Lamar filed a petition for writ of certiorari in Superior Court on 12 May 2005, and an amended petition on 5 July 2005. Lamar contended that its relocation of the billboard was expressly authorized by DOT and, pursuant to N.C. Gen. Stat. §§ 160A-174(b)(2) and (5), Respondents were preempted from enforcing any ordinances that prohibited relocation of the billboard within DOT regulations. Lamar also contended that (1) the Board had committed errors of law; (2) the record did not contain substantial, competent, and material evidence to support the Board's decision; and (3) the Board's decision was not based upon substantial, competent, and material evidence and was arbitrary and capricious. Respondents filed an answer to the petition on 5 August 2005. The Superior Court allowed the writ of certiorari on 2 February 2006, finding that Lamar was entitled to a review of the Board's decision. The writ also required the County to certify the record of the proceedings to the Superior Court within sixty days.

Respondents filed a motion to supplement the record on 30 March 2006. Respondents sought to include in the record sworn affidavits by (1) Sandy; (2) the Outdoor Advertising Representative for DOT, Terry Morgan; and (3) the Right-of-Way Agent for DOT, Charles D. Napier. Lamar filed objections to Respondents' motion, contending (1) that Respondents were improperly attempting to introduce evidence that was not part of the record before the Board; (2) that if the motion was allowed, Lamar would be unable to cross-examine the witnesses contrary to its right of cross-examination in a quasi-judicial hearing; and (3) that Sandy's affidavits improperly raised zoning violations which were not part of the Board's decision.

The Superior Court heard arguments on Lamar's appeal and Respondents' motion on 10 April 2006. In an order entered 19 April

2006, the Superior Court found that when Lamar relocated the billboard without the involvement of the County, the billboard became a newly erected and illegal sign which violated the County's zoning ordinance. The Superior Court concluded that Lamar was required to comply with the County's zoning ordinance when the billboard was relocated and that Lamar had not done so. The Superior Court also concluded that the County was not preempted from regulating outdoor advertising signs because (1) the County's zoning ordinance did not purport to regulate a field for which State law provided a complete and integrated regulatory scheme to the exclusion of local regulation; and (2) the County's zoning ordinance did not make unlawful an act, omission, or condition which was expressly made lawful by State law. The Superior Court further concluded that the Board did not commit any errors of law, that there was competent, material, and substantial evidence to support the Board's decision, and that the Board's decision was not arbitrary or capricious. Lamar appeals this order.

In a separate order entered 28 April 2006, the Superior Court denied Respondents' motion to supplement the record, concluding that Respondents sought to supplement the record with evidence that would inappropriately add to the evidence that was before the Board. Respondents appeal this order.

## I. Lamar's Appeal

Lamar brings before this Court two main arguments: (1) the Superior Court erred by concluding that the County's regulations were not preempted by State law regulating outdoor advertising; and (2) the Superior Court erred by concluding that the Board's decision was supported by competent evidence and was not arbitrary and capricious.

"When the Superior Court grants certiorari to review a decision of [a] Board, it functions as an appellate court rather than a trier of fact." *Hopkins v. Nash County*, 149 N.C. App. 446, 447, 560 S.E.2d 592, 593-94 (2002). The Superior Court must

(1) review the record for errors of law; (2) ensure that procedures specified by law in both statute and ordinance are followed; (3) ensure that appropriate due process rights of the petitioner are protected, including the right to offer evidence, cross-examine witnesses, and inspect documents; (4) ensure that the decision is supported by competent, material, and substantial evidence in

the whole record; and (5) ensure that the decision is not arbitrary and capricious.

*Whiteco Outdoor Adver. v. Johnston County Bd. of Adjust.*, 132 N.C. App. 465, 468, 513 S.E.2d 70, 73 (1999). When reviewing a Superior Court's decision, "this Court must determine: 1) whether the [superior] court used the correct standard of review; and, if so, 2) whether it properly applied this standard." *Hopkins*, 149 N.C. App. at 447, 560 S.E.2d at 593. If a petitioner asserts that a board committed an error of law, the Superior Court must apply a *de novo* standard of review. *Hopkins*, 149 N.C. App. 446, 560 S.E.2d 592. If a petitioner asserts that a board's decision was not supported by the evidence, or was arbitrary and capricious, then the Superior Court must apply the whole record standard of review. *Id.*

## A. Preemption

[1] Lamar argues that the County's zoning ordinance prohibiting the relocation of the billboard is preempted by the North Carolina Outdoor Advertising Control Act ("OACA"), N.C. Gen. Stat. § 136-126 *et seq.*, and corresponding DOT regulations. Specifically, Lamar argues that the zoning ordinance purports to regulate a field for which State law provides a complete and integrated regulatory scheme to the exclusion of local regulation and that the County's zoning ordinance makes unlawful an act, omission, or condition which is expressly made lawful by State law. Because Lamar alleges an error of law, we conclude the Superior Court correctly applied a *de novo* standard of review. We now review whether the Superior Court did so properly.

Where a local ordinance conflicts with State law, the ordinance must yield. *In re Application of Melkonian*, 85 N.C. App. 351, 355 S.E.2d 503, *disc. review denied*, 320 N.C. 631, 360 S.E.2d 91 (1987). N.C. Gen. Stat. § 160A-174(b) (2005) provides, in part, that a local ordinance conflicts with State law when:

(2) The ordinance makes unlawful an act, omission or condition which is expressly made lawful by State or federal law; [or]

. . . .

(5) The ordinance purports to regulate a field for which a State or federal statute clearly shows a legislative intent to provide a complete and integrated regulatory scheme to the exclusion of local regulation[.]

Lamar contends that the County's zoning ordinance is preempted under N.C. Gen. Stat. § 160A-174(b)(5). We disagree. In *Lamar Outdoor Adver., Inc. v. City of Hendersonville Zoning Bd. of Adjust.*, 155 N.C. App. 516, 573 S.E.2d 637 (2002), this Court examined the legislative intent of the OACA and concluded that "the OACA does not preempt local regulation of outdoor advertising." *Id.* at 521, 573 S.E.2d at 642. We rejected the conclusion that when enacting the OACA, "the General Assembly expressed an intention to regulate outdoor advertising only on a statewide basis, or to preclude local entities from regulating in this area." *Id.* at 520, 573 S.E.2d at 641. In *Morris Communications Corp. v. Bd. of Adjust. for City of Gastonia*, 159 N.C. App. 598, 583 S.E.2d 419, *appeal dismissed*, 357 N.C. 658, 590 S.E.2d 269 (2003), *reh'g denied*, 358 N.C. 155, 592 S.E.2d 690 (2004), we cited *Lamar* and again rejected the argument that the OACA was a "complete and integrated regulatory scheme" pursuant to N.C. Gen. Stat. § 160A-174(b)(5). *Id.* at 604, 583 S.E.2d at 423. We conclude that these cases control determination of this issue in the present case and dictate the conclusion that the OACA and its corresponding regulations do not preempt local regulation of outdoor advertising under N.C. Gen. Stat. § 160A-174(b)(5).

Lamar also contends that DOT's outdoor advertising regulations expressly authorize the relocation of a billboard within certain limitations, and that the County's zoning ordinance makes such action unlawful. Therefore, according to Lamar, N.C. Gen. Stat. § 160A-174(b)(2) provides that the DOT regulations preempt the County's zoning ordinance. We agree.

The General Assembly enacted the OACA "to provide and declare herein a public policy and statutory basis for the regulation and control of outdoor advertising." N.C. Gen. Stat. § 136-127 (2005). "The OACA delegates to [DOT] authority to further promulgate rules and regulations governing erection and maintenance of billboards, permitting procedures, appeal procedures related to administrative decisions denying or revoking a permit, and administrative procedures for appealing a decision that a billboard is illegal." *Capital Outdoor, Inc. v. Tolson*, 159 N.C. App. 55, 57, 582 S.E.2d 717, 719, *disc. review denied*, 357 N.C. 504, 587 S.E.2d 662 (2003).

DOT's regulations enacted pursuant to the OACA define a "Nonconforming Sign" as:

A sign which was lawfully erected but which does not comply with the provisions of State law or rules passed at a later date or

which later fails to comply with State law or rules due to changed conditions. . . .

19A N.C.A.C. 2E.0200(16) (June 2004). The OACA defines "State law" as "a State constitutional provision or statute, or an ordinance, rule or regulation enacted or adopted by a State agency or political subdivision of a State pursuant to a State Constitution or statute." N.C. Gen. Stat. § 136-129(6) (2005). As "[c]ounties are instrumentalities and agencies of the State government[,]" *High Point Surplus Co. v. Pleasants*, 264 N.C. 650, 654, 142 S.E.2d 697, 701 (1965), the billboard became a nonconforming sign within the meaning of DOT's regulations when the County amended its zoning ordinance preventing signs from being erected in areas zoned HB.

DOT's regulations provide that "[a] nonconforming sign . . . may continue as long as it is not abandoned, destroyed, discontinued, or significantly damaged." 19A N.C.A.C. 2E.0225(e) (June 2004). The regulations also provide that a "Sign Location/Site" "shall be measured to the closest 1/100th of a mile, in conformance with [DOT] methods of measurement for all state roads." 19A N.C.A.C. 2E.0201(27) (June 2004). We therefore read 19A N.C.A.C. 2E.0225(e) to mean that "a nonconforming sign . . . may continue [at a Sign Location/Site] as long as it is not abandoned, destroyed, discontinued, or significantly damaged." Such a reading is bolstered by 19A N.C.A.C. 2E.0210 which sets forth the grounds for revocation of a permit. Pursuant to that regulation,

> [t]he [DOT] district engineer shall revoke a permit for a lawful outdoor advertising structure based on any of the following:
>
> . . . .
>
> (16) moving or relocating a nonconforming sign . . . which changes the location of the sign *as determined by Rule .0201(27)* of this Section[.]

19A N.C.A.C. 2E.0210 (June 2004) (emphasis added). We interpret the revocation regulation to mean that DOT can only revoke a permit for a nonconforming sign on the ground that the sign was moved or relocated if the sign is moved or relocated *outside the sign location/site.* Accordingly, the OACA and DOT's regulations promulgated thereunder allow a permit holder to move a nonconforming sign within the bounds of the "Sign Location/Site" as defined by 19A N.C.A.C. 2E.0201(27).

Conversely, Article IV Section 406.4(G) of Stanly County's zoning ordinance provides that "[a] nonconforming sign . . . shall not be moved or replaced except to bring the sign into complete conformity with [the County's ordinance]." This provision is in conflict with DOT's regulations, and we analyze the conflict as we did under similar circumstances in *Morris*, 159 N.C. App. 598, 583 S.E.2d 419. The local ordinance in effect in *Morris* provided:

> (c) A nonconforming sign may not be moved or sign structure replaced except to bring the sign into complete conformity with this chapter. Once a nonconforming sign is removed (i.e., the removal of the structural appurtenances above the base or footing) from the premises or otherwise taken down or moved, said sign only may be replaced or placed back into use with a sign which is in conformance with the terms of this chapter.

> (d) Minor repairs and maintenance of nonconforming signs necessary to keep a nonconforming sign in sound condition are permitted.

*Id.* at 602, 583 S.E.2d at 422. The relevant DOT regulation provided:

> (c) Alteration to a nonconforming sign . . . is prohibited. Reasonable repair and maintenance are permitted including changing the advertising message or copy. The following activities are considered to be reasonable repair and maintenance:

> (1) Change of advertising message or copy on the sign face.

> (2) Replacement of border and trim.

> (3) Repair and replacement of a structural member, including a pole, stringer, or panel, with like material.

> (4) Alterations of the dimensions of painted bulletins incidental to copy change.

*Id.* at 604, 583 S.E.2d at 423. On appeal to this Court, we concluded that the DOT regulation expressly permitted repair and replacement of a billboard's structural member, and therefore, the ordinance was preempted to the extent that it conflicted with the DOT regulation. *Morris* is indistinguishable from the case at bar.

The Stanly County ordinance at issue in this case makes unlawful an act, omission, or condition expressly made lawful by State law and is preempted. The Superior Court erred in concluding otherwise. Lamar was not required to apply for a new permit from the County. In

reaching this determination, we note that at all times Lamar had a valid DOT permit and that a permit issued by DOT "shall be valid until revoked for nonconformance with [the OACA] or rules adopted by the [DOT]." N.C. Gen. Stat. § 136-133(a) (2005). Furthermore, we note that the County's denial of a permit to Lamar would in effect cause the billboard to be removed. This the County cannot do "without the payment of just compensation[.]" N.C. Gen. Stat. § 136-131.1 (2005).

Because we conclude that the County's ordinance is preempted by State law, we need not reach Lamar's contention that the Board's decision was not supported by competent evidence and was arbitrary as a matter of law.

## II. Respondent's Appeal

[2] Respondents contend that the Superior Court erred in denying their motion to supplement the record before that court with the affidavits of Sandy and two people who did not testify before the Board. We disagree.

A superior court reviewing a decision of a board of adjustment " 'sits in the posture of an appellate court' " and " 'does not review the sufficiency of evidence presented to it but reviews *that evidence presented to the town board.*' " *Mann Media, Inc. v. Randolph County Planning Bd.*, 356 N.C. 1, 12, 565 S.E.2d 9, 17 (2002) (quoting *Coastal Ready-Mix Concrete Co. v. Board of Comm'rs of Nags Head*, 299 N.C. 620, 626-27, 265 S.E.2d 379, 383, *reh'g denied*, 300 N.C. 562, 270 S.E.2d 106 (1980)) (emphasis added).

The affidavits with which Respondents attempted to supplement the record before the Superior Court were not before the Board. As such, the trial court did not err in denying Respondents' motion to supplement the record before the Superior Court.

AFFIRMED IN PART, REVERSED IN PART.

Judge HUNTER concurs.

Judge McGEE concurs in part and dissents in part by separate opinion.

McGEE, Judge, concurring in part and dissenting in part.

I concur with the majority's conclusion that local regulation of outdoor advertising is not preempted under N.C. Gen. Stat.

§ 160A-174(b)(5). However, I do not agree with the majority's conclusion that the County's zoning ordinance is preempted pursuant to N.C. Gen. Stat. § 160A-174(b)(2). Therefore, I respectfully dissent from that portion of the majority's opinion and vote to affirm the Superior Court's order concluding that the County's zoning ordinance is not preempted.

The majority holds that the OACA and the corresponding DOT regulations expressly allow a permit holder to relocate a nonconforming billboard within a Sign Location/Site, but the County's zoning ordinance prohibits such action. The majority therefore concludes that the County's zoning ordinance is preempted pursuant to N.C.G.S. § 160A-174(b)(2). The majority also finds this Court's decision in *Morris Communications Corp. v. Board of Adjust. of Gastonia*, 159 N.C. App. 598, 583 S.E.2d 419 (2003), *reh'g denied*, 358 N.C. 155, 592 S.E.2d 690 (2004) to require that we find the County's zoning ordinance is preempted. I do not agree.

In *Morris*, the City of Gastonia required the petitioner to apply for a permit to change the frame and advertising sign on a billboard. *Id.* at 599, 583 S.E.2d at 420. When the petitioner applied for the permit, the City denied the application. *Id.* The petitioner appealed the decision, arguing that changing the frame and the advertisement on the billboard was expressly permitted by State law. *Id.* The Board of Adjustment upheld the denial of the permit, but the Superior Court reversed, concluding, *inter alia*, that State law preempted the city's ordinance. *Id.* The city ordinance in effect in *Morris* provided:

> (c) A nonconforming sign may not be moved or sign structure replaced except to bring the sign into complete conformity with this chapter. Once a nonconforming sign is removed (i.e., the removal of the structural appurtenances above the base or footing) from the premises or otherwise taken down or moved, said sign only may be replaced or placed back into use with a sign which is in conformance with the terms of this chapter.

> (d) Minor repairs and maintenance of nonconforming signs necessary to keep a nonconforming sign in sound condition are permitted.

*Id.* at 602, 583 S.E.2d at 422. The relevant DOT regulation provided:

> (c) Alteration to a nonconforming sign . . . is prohibited. Reasonable repair and maintenance are permitted including

changing the advertising message or copy. The following activities are considered to be reasonable repair and maintenance:

(1) Change of advertising message or copy on the sign face.

(2) Replacement of border and trim.

(3) Repair and replacement of a structural member, including a pole, stringer, or panel, with like material.

(4) Alterations of the dimensions of painted bulletins incidental to copy change.

*Id.* at 604, 583 S.E.2d at 423. As the majority recognizes in the present case, we concluded in *Morris* that the DOT regulation expressly permitted repair and replacement of a billboard's structural member. Therefore, the ordinance was preempted to the extent that it conflicted with the DOT regulation. *Id.* at 605, 583 S.E.2d at 423-24. Further, we also concluded in *Morris* that N.C. Gen. Stat. § 136-131.1 did not apply because the City of Gastonia did not remove the sign or cause the sign to be removed. *Id.* at 605, 583 S.E.2d at 424.

In the present case, I draw the same conclusion as to N.C.G.S. § 136-131.1. Respondents did not remove the sign or cause the sign to be removed. Indeed, the County was not even aware of the change in the billboard's location until after Lamar had relocated the billboard. Further, even if N.C.G.S. § 136-131.1 does apply to the present case, it does not prohibit local governments from removing signs, or causing signs to be removed, but prohibits local governments from doing so "without the payment of just compensation[.]" Therefore, this provision does not provide a basis for finding that the County's zoning ordinance is preempted.

I also conclude that the definitions included in 19A N.C.A.C. 2E.0201 and the grounds for revocation contained in 19A N.C.A.C. 2E.0210 relied upon by Lamar do not expressly make lawful an act made unlawful by the County's zoning ordinance. Although Lamar insists, and the majority agrees, that *Morris* requires us to conclude that the County's zoning ordinance is preempted, I find the DOT regulations applicable in the present case to be different from the DOT regulation at issue in *Morris*, and I distinguish *Morris* on that ground. Two of the provisions relied upon by Lamar are contained in the definition section of the regulations, and the third lists situations in which DOT can revoke a permit. Furthermore, although the majority correctly states that DOT's regulations provide that "[a] nonconform-

ing sign . . . may continue as long as it is not abandoned, destroyed, discontinued, or significantly damaged[,]" this provision does not mention relocation of a billboard. In contrast, the regulation at issue in *Morris* was a substantive statement of prohibited and permissible actions regarding nonconforming signs and expressly stated that " '[r]easonable repair and maintenance [of a nonconforming billboard] are permitted including changing the advertising message or copy.' " *Morris*, 159 N.C. App. at 604, 583 S.E.2d at 423 (quoting 19A N.C.A.C. 2E.0225(c)). I conclude that the DOT regulations relied upon by Lamar and the majority in the present case do not expressly make lawful the relocation of a nonconforming sign within the "Sign Location/Site" in violation of local zoning ordinances. Therefore, I would affirm the Superior Court's conclusion that the County's zoning ordinance is not preempted by the OACA or DOT's corresponding regulations pursuant to N.C.G.S. § 160A-174(b)(2).

Lamar also briefly argues that the Board's decision was not supported by competent evidence and was arbitrary as a matter of law. When reviewing a claim that a board's decision was not supported by the evidence, or was arbitrary and capricious, the Superior Court must apply the whole record standard of review. *Hopkins v. Nash County*, 149 N.C. App. 446, 448, 560 S.E.2d 592, 594 (2002). "The 'whole record' test requires the reviewing court to examine all competent evidence (the 'whole record') in order to determine whether the agency decision is supported by 'substantial evidence.' " *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994). "The 'whole record' test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*." *Thompson v. Board of Education*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977).

Lamar argues that the Board's findings of fact were based upon a misapprehension of law regarding the preemption issue and, therefore, are not binding on appeal and should not be upheld. Because I conclude that the Superior Court did not err by upholding the Board's decision, I reject this argument.

Finally, because I would affirm the Superior Court's order from which Lamar appeals, I do not reach Respondent's assignments of error.